UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
RICHARD ELTON SUTTON,               )
                                    )
            Plaintiff,              )
                                    )   Civil Action
       v.                           )   No. 17-12253-PBS
                                    )
NANCY A. BERRYHILL, Acting Commissioner )
of the Social Security Administration, )
                                    )
            Defendant.              )
_____)

**MEMORANDUM AND ORDER**

February 20, 2019

Saris, C.J.

**INTRODUCTION**

Plaintiff Richard Elton Sutton brings this action under 42 U.S.C. § 405(g) for judicial review of a final decision denying his application for Social Security Disability Insurance ("SSDI") and Supplemental Security Income ("SSI") benefits. Plaintiff suffers from various mental impairments including anxiety, depression, and post-traumatic stress disorder ("PTSD"). He argues that the Administrative Law Judge ("ALJ") deciding his case erred in two respects: (1) by improperly weighing the medical opinion evidence from his treating psychiatrist, and (2) by failing to properly evaluate his subjective statements regarding his symptoms.

1

For the reasons set forth below, the Court **ALLOWS** Plaintiff's motion for judgment on the pleadings (Dkt. No. 12) and remands the action, and **DENIES** Defendant's motion to affirm the Commissioner's decision (Dkt. No. 15).

**FACTUAL BACKGROUND**

Plaintiff was 46 years old when he filed his applications for SSDI and SSI on May 5, 2014. R. 287. He had previously worked as a construction laborer, a material handler, and an order filler. R. 96-97. Plaintiff alleged disability due to PTSD, depression, and diabetes. R. 144. He also experienced homelessness and struggled with substance abuse. R. 623-24.

I.  **Medical History**[1]

On April 8, 2014, Plaintiff had his first visit with Dr. Jonathan Rothberg, a psychiatrist. R. 471. Plaintiff scored "very high" on a questionnaire that screens for depression. R. 471. Dr. Rothberg noted that the depression was "possibly situational," as Plaintiff was unable to secure a case manager at the homeless shelter or find steady work. R. 468, 471. Plaintiff expressed hopelessness. R. 468.

On April 11, 2014, Plaintiff underwent psychiatric evaluation by Dr. Esther Valdez. R. 623-28. Plaintiff displayed

---

[1] This section focuses on evidence of Plaintiff's mental health conditions because that is the basis for Plaintiff's appeal. The record also contains evidence of certain physical ailments.

2

symptoms of anxiety and depression including agitation, depressed mood, irritability, low self-esteem, and worry. R. 626. Dr. Valdez noted that Plaintiff had a depressed and "angry/hostile" mood and displayed "anxious preoccupations." R. 626-27. His appearance, alertness, memory, attention, behavior, thought process, and perception were otherwise normal. R. 626-27. Despite his complaints of "severe depression," Plaintiff declined psychiatric intervention because he was "looking to find an employment advocate and legal aid only." R. 627-28. Plaintiff reported regular marijuana use, as well as a history of cocaine and alcohol abuse. R. 623, 625.

Plaintiff then saw Dr. Dyanne London, a psychotherapist, on April 16, 2014. R. 464-66. During the visit, Plaintiff expressed a desire "to meet before he explodes" and reported a history of depression. R. 465. His mental status exam showed cooperative behavior, good impulse control, euthymic mood, appropriate affect, coherent thought process, intact memory, good insight to disorder, and no judgment impairment. R. 465-66.

On April 23, 2014, Plaintiff met with Karen Fink, a licensed social worker, who diagnosed him with anxiety disorder and depressive disorder, and considered a PTSD diagnosis. R. 330. Ms. Fink did not record any mental status findings. Id.

Plaintiff saw Edwige Berrouet, another licensed social worker, two days later on April 25, 2014. R. 339. Mr. Berrouet

3

noted that Plaintiff displayed symptoms of anxiety and depression including difficulty concentrating, irritability, worry, anhedonia, fatigue, difficulty sleeping, and depressed mood. R. 342. Plaintiff told Mr. Berrouet that he regularly used marijuana to self-medicate, and that he used cocaine "off and on." R. 339, 341. Plaintiff also reported that he had twice seen a psychiatrist for treatment and had been prescribed Paxil, a drug used to treat anxiety and depression. R. 340.

Dr. Anna Fitzgerald, a board-certified psychiatrist, also evaluated Plaintiff on April 25, 2014. R. 312. Dr. Fitzgerald noted the following symptoms: decreased appetite, decreased energy level, loss of interest in pleasurable activities, isolation, avoidance, and panic attacks. R. 315-16. Plaintiff's appearance, behavior, attention, language, thought process, perception, orientation, and memory were again normal. R. 316-17. Plaintiff's Global Assessment of Functioning ("GAF") score was 55, which was indicative of moderate symptoms. R. 317. Dr. Fitzgerald prescribed Zoloft, an antidepressant, and recommended that Plaintiff begin individual therapy. R. 317-18.

Plaintiff saw Dr. Fitzgerald again on May 2, 2014. R. 321. Dr. Fitzgerald noted that Plaintiff "continue[d] to feel depressed" and "also [had] some panic symptoms and posttraumatic reexperiencing [sic], avoidance, and hyperarousal." R. 321. Dr. Fitzgerald added trauma to Plaintiff's list of symptoms and

4

noted that Plaintiff experienced flashbacks and nightmares. R. 323. She urged Plaintiff to stop using marijuana and cocaine both "for his health and for his application for disability." R. 321. Dr. Fitzgerald diagnosed Plaintiff with major depressive disorder (recurrent, moderate) and anxiety disorder, but she ruled out a PTSD diagnosis. R. 324

Plaintiff continued seeing Dr. Fitzgerald every three months through at least March 2016. R. 696. Notes from these visits, however, are not included in the administrative record.

## II. State Agency Medical Consultant Evaluations

Judith Bevis, Ph.D., evaluated Plaintiff on November 18, 2014. R. 691-95. Plaintiff indicated that he was applying for disability benefits because of "problems with 'job selection.'" R. 691. He "appear[ed] to be dysphoric" and reported that he had "become quite depressed" because of his unemployment and other stressors. R. 691. He described disturbances in sleeping habits, mood, and energy level, but had no difficulties with activities of daily living. R. 693-94. He also reported experiences of abuse as a child and often found himself in situations in which he felt victimized. R. 694. Dr. Bevis diagnosed Plaintiff with major depression and PTSD, and recommended therapy. R. 694. She assessed a GAF score of 65, reflecting mild symptoms. R. 695.

Plaintiff indicated to Dr. Bevis that he wanted to return to full-time construction work and "seemed to have difficulty

5

figuring out how to transition to a different type of work outside of being a union laborer." R. 694. He expressed aversion to low paying jobs that "do not lead to a career" and would leave him "[un]able to support himself." R. 692. Dr. Bevis opined that Plaintiff might be a candidate for vocational retraining. R. 694.

On November 26, 2014, psychologist Aryeh Shestopal, Ph.D., reviewed the then available records. R. 127-28. Dr. Shestopal assigned the greatest weight to the assessment completed by Dr. Bevis. R. 128. He found that Plaintiff had "potential for antagonistic behavior, possibly due to his interpersonal stance of viewing himself as 'victimized,' in the context of early trauma." R. 128. He anticipated "moderate difficulty in following supervisory instructions or adjusting to change" but found no evidence of significant limitations in other spheres of functioning. R. 128.

III. **Treating Psychiatrist Evaluation**

On March 21, 2016, during a regular visit, Dr. Fitzgerald diagnosed major depression and PTSD. R. 696. Plaintiff's GAF scored had also decreased to 40.[2] R. 696. Dr. Fitzgerald completed a Mental Residual Functional Capacity Assessment for Plaintiff. R. 696-99. Dr. Fitzgerald reported that Plaintiff was

---

[2] A GAF score of 31 to 40 denotes some impairment in reality testing or communication or a major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood functioning.

6

moderately or markedly limited in 12 of 21 areas of mental functioning. R. 696-99. She indicated that Plaintiff was moderately limited in his ability to carry out detailed instructions; work in coordination with or proximity to others without being distracted by them; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and set realistic goals or make plans independently of others. R. 697-99. His marked limitations included the ability to understand and remember detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance and be punctual; complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace; respond appropriately to changes in the work setting; travel to unfamiliar places or use public transportation; and tolerate normal levels of stress. R. 697-99. Dr. Fitzgerald also reported that she had been seeing Plaintiff for treatment every three months since 2014. R. 696.

## IV. **Hearing Testimony**

At the hearing on May 5, 2016, Plaintiff testified that he had depression, anxiety, and PTSD. R. 73. He stated that because of these impairments he had difficulty understanding and remembering instructions, concentrating, maintaining regular

7

attendance and being on time, and tolerating work stress. R. 75-76, 86. He also claimed that his depression and anxiety caused him to "clash" with his employers, causing each of his 50 to 60 employment relationships to end after two or three months. R. 73. He stated that his depression improved with medication, but that when his anxiety was triggered he tended to neglect his health and personal needs. R. 87. He testified that he had not used cocaine in 11 months but continued to use marijuana to deal with PTSD. R. 74, 78.

## **PROCEDURAL HISTORY**

Plaintiff filed his applications for SSDI and SSI on May 5, 2014, alleging a disability onset date of May 15, 2013.[3] R. 200. His applications were denied initially on July 25, 2014, and again on reconsideration on January 22, 2015. R. 119, 141. On March 20, 2015, Plaintiff filed a request for a hearing, which was held before an ALJ on May 5, 2016. R. 63, 157. Plaintiff appeared at the hearing with counsel. R. 65. A vocational expert ("VE") also appeared and testified. R. 65.

The ALJ issued her decision on June 15, 2016. R. 41-57. At step one, the ALJ found that Plaintiff had not engaged in any substantial gainful activity since the onset of his disability. R. 44. At step two, the ALJ found that Plaintiff suffered from a

---

[3] Plaintiff later amended his alleged disability onset date to May 1, 2014. R. 71-72.

8

number of severe impairments, including affective disorder, anxiety disorder, PTSD, and polysubstance abuse disorder with occasional marijuana use and cocaine abuse in early remission. R. 44. At step three, the ALJ found that Plaintiff did not have an impairment or a combination thereof that met or equaled the severity of one of the impairments listed in the regulations. R. 44-46. Next, the ALJ found that Plaintiff possessed the capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b) except that he could only "manage superficial interactions in the workplace" and "adapt to minor changes in workplace demands." R. 46-55. In making this determination, the ALJ gave "less weight" to the mental functional assessment completed by Plaintiff's treating psychiatrist, Dr. Fitzgerald, in March 2016. R. 55. The ALJ misidentified Dr. Fitzgerald as a "treating nurse practitioner," concluded that she was "not a medically acceptable treating source," and found her assessment "[un]supported by the objective record" and, specifically, contradicted by "treating physician and evaluating source notes and observations." R. 53-55. The ALJ gave "great weight" to the psychological assessment completed by Dr. Shestopal in November 2014. R. 55. At step four, the ALJ found that Plaintiff could perform his past work as an order filler. R. 56-57. The ALJ concluded that Plaintiff was not disabled under the Social Security Act. R. 57.

On July 22, 2016, Plaintiff timely requested review of the ALJ's decision by the Appeals Council. R. 198. The Appeals Council denied Plaintiff's request for review on September 14, 2017. R. 6. This appeal then followed.

## **LEGAL STANDARDS**

### **I. Statutory and Regulatory Framework**

Under the Social Security Act, a claimant seeking benefits must prove that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To meet this definition, a person must have a severe impairment that renders him unable to do his past relevant work or any other substantial gainful work that exists in the national economy. 20 C.F.R. § 416.905(a).

The ALJ employs a five-step sequential evaluation process to assess a claim for disability benefits. See id. §§ 404.1520(a)(4)(i)-(v), 404.1594. The evaluation may be concluded at any step in the process if it is determined that the claimant is or is not disabled. Id. § 404.1520(a)(4). The steps are: (1) if the claimant is engaged in substantial gainful work activity, the application is denied; (2) if the claimant does not have, or has not had within the relevant time period, a severe impairment or combination of impairments, the application is denied; (3) if

10

the claimant's impairment meets the conditions for one of the "listed" impairments in the Social Security regulations, then the application is granted; (4) if the claimant's residual functional capacity ("RFC") is such that he or she can still perform past relevant work, then the application is denied; (5) if the claimant, given his or her RFC, education, work experience, and age, is unable to do any other work, the application is granted. Id.; Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001).

## II. Standard of Review

The Court may set aside the ALJ's decision if it resulted from legal error or if the factual findings were not supported by substantial evidence. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999). The Court reviews the ALJ's conclusions of law de novo. Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 655 (1st Cir. 2000). "Failure of the [ALJ] to apply the correct legal standards as promulgated by the regulations or failure to provide the reviewing court with the sufficient basis to determine that the [ALJ] applied the correct legal standards are grounds for reversal." Weiler v. Shalala, 922 F. Supp. 689, 694 (D. Mass. 1996) (citing Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982)). Where application of the correct legal standard could support a different conclusion, the agency's decision must be remanded. See Ward, 211 F.3d at 656; see also

Dantran, Inc. v. U.S. Dep't of Labor, 171 F.3d 58, 75 (1st Cir. 1999) (holding that, while the "customary rule" is to remand once a court "sets aside an agency determination," remand is unnecessary despite legal error in the "rare case in which the facts admit of only one plausible legal conclusion").

For findings of fact, "even if the record arguably could justify a different conclusion," the Court must affirm the decision "so long as it is supported by substantial evidence." Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987). Substantial evidence exists "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the ALJ's] conclusion." Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981). Substantial evidence does not exist when the ALJ's factual findings are "derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen, 172 F.3d at 35. The Court examines the record in its entirety to determine the weight and "substantiality" of the evidence. Rohrberg v. Apfel, 26 F. Supp. 2d 303, 306 (D. Mass. 1998).

## DISCUSSION

Plaintiff challenges the ALJ's decision on the bases that (1) the ALJ misidentified Dr. Fitzgerald as a nurse practitioner who was "not a medically acceptable treating source", and

12

(2) the ALJ did not properly evaluate Plaintiff's subjective statements from his hearing testimony regarding his functional limitations. The Court concludes that the ALJ failed to properly weigh the medical opinion of Dr. Fitzgerald which requires the case be remanded for a new hearing and, therefore, the Court does not address Plaintiff's second argument.

Under the applicable regulations, a "medical source" is "an individual who is licensed as a healthcare worker by a State and working within the scope of practice permitted under State or Federal law," 20 C.F.R. § 404.1502(d), which includes both licensed psychiatrists and licensed nurse practitioners. The definition of an "acceptable medical source" includes licensed psychiatrists and licensed psychologists, but it does not include nurse practitioners.[4] See id. § 404.1502(a). A "treating source" is an "acceptable medical source who provides [the claimant] with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]." Id. § 404.1527(a)(2), 416.927(a)(2). Dr. Fitzgerald is a licensed psychiatrist who treated Plaintiff continuously from April 2014 through at least March 2016, which qualifies her as an

---

[4] The applicable regulations have changed since Plaintiff filed his claim for benefits. For claims filed on or after March 27, 2017 a nurse practitioner is considered to be an "acceptable medical source." Id. § 404.1502(a)(7).

13

"acceptable medical source" and a "treating source." Defendant does not dispute this point.

Opinions from treating sources are given controlling weight provided that they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with other substantial evidence" in the record. Id. §§ 404.1527(c)(2), 416.927(c)(2). An opinion from a treating source that does not get controlling weight is weighed according to several factors, including: the length of the treatment relationship and the frequency of examination; the nature and extent of the treatment relationship; the evidence in support of the medical opinion; the consistency of the medical opinion with the record as a whole; the medical source's specialty; and other factors which tend to support or contradict the opinion. Id. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6). An ALJ need not expressly address each factor identified by the regulations but must provide "good reasons" for the weight assigned to the opinion of a treating source. Bourinot v. Colvin, 95 F. Supp. 3d 161, 177 (D. Mass. 2015); see also 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

An opinion from a medical source that is not a medically acceptable source is weighed using the same factors that apply to treating sources. 20 C.F.R. §§ 404.1527(f), 416.927(f). In contrast, an ALJ does not need to provide "good reasons" for the

14

weight assigned to an opinion from a medical source that is not an acceptable medical source. Armata v. Berryhill, No. 3:17-cv-30054-KAR, 2018 WL 4829180, at *16 (D. Mass. Oct. 4, 2018); see also 20 C.F.R. §§ 404.1527(f)(2), 416.927(f)(2). Yet the ALJ must provide some explanation for the weight given to the opinion. Armata, 2018 WL 4829180, at *16.

Here, the ALJ evidently followed the less demanding framework for weighing non-acceptable medical sources in considering Dr. Fitzgerald's RFC assessment. The ALJ provided just two bases for discounting Dr. Fitzgerald's opinion: (1) she was "not a medically acceptable treating source," and (2) "her moderate and marked mental functional assessments [were] not supported by the objective record and, in fact, [were] contradicted by treating physician and evaluating source notes and observations."[5] R. 55. With respect to the second basis, the ALJ noted that "the claimant's mental status exams have all been stable or unremarkable, with normal thought process and content, average intelligence, intact memory and concentration, intact

---

[5] Defendant characterizes the ALJ's second basis for discounting Dr. Fitzgerald's opinion as two distinct bases, suggesting the ALJ concluded that Dr. Fitzgerald's opinion (1) lacked support, 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3), and (2) was inconsistent with the record of as a whole, id. §§ 404.1527(c)(4), 416.927(c)(4). Dkt. No. 16 at 13. The Court is not persuaded by this reading of the ALJ's decision. Section (c)(3) of the applicable regulations specifically contemplates whether the medical opinion itself contains evidentiary support for its conclusions. Nowhere in the decision did the ALJ analyze the evidence Dr. Fitzgerald relied upon in support of her RFC assessment. The two purported bases identified by Defendant are one and the same: the ALJ discounted Dr. Fitzgerald's opinion because it found the opinion was inconsistent with the rest of the record. R. 55.

15

insight and judgement, and no evidence of psychosis, suicidal or homicidal ideation." R. 55.

Defendant concedes that the ALJ erred in misidentifying Dr. Fitzgerald as a nurse practitioner rather than a licensed psychiatrist and, therefore, not a treating source as defined by the applicable regulations. Nevertheless, Defendant contends that this error was harmless because the ALJ's other basis for discounting the opinion of Dr. Fitzgerald satisfied the more demanding "good reasons" standard for the weight assigned to a treating source. The Court disagrees.

The ALJ's decision ignores the crucial fact that there is no evidence in the record of Plaintiff's mental condition between November 2014 and Dr. Fitzgerald's RFC assessment from March 2016. In Soto-Cedeño v. Astrue, the First Circuit held that an RFC assessment performed by the claimant's treating psychiatrist could not be "reasonably characterized as 'inconsistent' with the other medical evidence in record" where the RFC assessment and other medical evidence were from "different time periods." 380 Fed. Appx. 1, 2 (1st Cir. 2010) (per curiam). Specifically, the First Circuit found that a "current" RFC assessment was not contradicted by the evaluations of consulting psychiatrists performed more than a year earlier. Id. This case presents the same question. Dr. Fitzgerald completed her RFC assessment of Plaintiff in March 2016. The

state agency medical consultants, Dr. Bevis and Dr. Shestopol, performed their evaluations of Plaintiff more than a year earlier in November 2014. And, other than Dr. Fitzgerald's RFC assessment in March 2016, the most recent medical evidence in the record from a treating source includes Dr. Fitzgerald's notes from April and May 2014. As in Soto-Cedeño, these older records do not support the ALJ's finding that Dr. Fitzgerald's opinion was inconsistent with the objective record.[6] See id.

The record appears to be missing treatment notes from 2014, 2015, and 2016. Dr. Fitzgerald's RFC assessment indicates that she had been Plaintiff's treating psychiatrist since 2014 and that she saw Plaintiff every three months. Yet the record includes only Dr. Fitzgerald's treatment notes from an initial appointment in April 2014 and a follow-up appointment in May 2014. In their briefs, the parties spar over whether the ALJ's failure to develop the record to include the missing notes forms an independent basis for reversing the ALJ's decision and remanding for further proceedings. The Court, however, does not need to reach that argument. The key point is that based on the

---

[6] Indeed, while GAF scoring is no longer part of the DSM, the significant drop in Plaintiff's score between November 2014 and March 2016 is suggestive of deterioration in his mental health status. See Bourinot, 95 F. Supp. 3d at 178 ("The GAF scale provides a rough estimate of an individual's psychological, social, and occupational functioning." (internal quotations omitted)); see also Kelley v. Berryhill, No. CV 16-12083-DJC, 2018 WL 4323820, at *13 (D. Mass. Sept. 10, 2018) (considering GAF scores to determine whether ALJ decision was supported by substantial evidence).

record the ALJ did not know how Plaintiff presented in his mental status exams during 2015 and 2016, which were the exams most relevant to weighing Dr. Fitzgerald's RFC assessment. Accordingly, the ALJ did not have substantial evidence for discounting Dr. Fitzgerald's March 2016 opinion regarding Plaintiff's functional limitations.

Since the ALJ made a serious error in not identifying Dr. Fitzgerald as a treating psychiatrist and provided no plausible reason for its decision to give little weight to her opinion, remand is required. Lemieux v. Berryhill, 323 F. Supp. 3d 224, 229 (D. Mass. 2018); see also Linehan v. Berryhill, 320 F. Supp. 3d 304, 306 (D. Mass. 2018) ("A goal of the treating source rule is to function as a procedural safeguard. Where . . . the Court cannot ascertain 'a clear understanding of why the ALJ rejected [the treating doctor's] opinion,' the goal of the treating source rule is not met." (second alteration in original) (citation omitted) (quoting Francis v. Comm'r Soc. Sec. Admin., 414 F. App'x 802, 804 (6th Cir. 2011))). If the ALJ had evaluated Dr. Fitzgerald's opinion under the correct legal standard, it could well have reached a different conclusion regarding Plaintiff's residual functional capacity. See Ward, 211 F.3d at 656.

**ORDER**

The Court remands the case for further proceedings consistent with this opinion.  The Court **DENIES** Defendant's motion to affirm the Commissioner's decision (Dkt. No. 15).

/s/ PATTI B. SARIS
Patti B. Saris
Chief United States District Judge